# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                    CASE NO: 8:20-cr-138-CEH-JSS

JHONIS ALEXIS LANDAZURI
ARBOLEDA,
DILSON DANIEL ARBOLEDA
QUINONES and
LUIS ELIAS ANGULO LEONES

## **ORDER**

This cause comes before the Court on the Report and Recommendation (Doc. 144), issued by Magistrate Judge Julie S. Sneed.  In the Report and Recommendation, Magistrate Judge Sneed recommends Defendant Angulo Leones's Motion to Dismiss Indictment (Doc. 48) and Defendant Arboleda Quinones's Motion to Dismiss for Lack of Jurisdiction (Doc. 54), which Defendant Jhonis Alexis Landazuri Arboleda adopted (Docs. 50, 55), be denied. All parties were furnished copies of the Report and Recommendation and were afforded the opportunity to file objections pursuant to 28 U.S.C. § 636(b)(1).

On December 23, 2021, Defendant Luis Angulo Leones filed an "Objection to the Magistrate Judge's Report and Recommendation on the Motion to Dismiss" (Doc. 151), which Defendants Jhonis Alexis Landzuri Arboleda and Dilson Daniel Arboleda Quinones adopted (Docs. 152, 153).  The Government filed a response to the objections. Doc. 161. Upon consideration of the Report and Recommendation, the

Objections, and upon this Court's independent examination of the file, the Objections will be overruled, the Report and Recommendation adopted, and the Motion to Dismiss Indictment (Doc. 48) and Motion to Dismiss for Lack of Jurisdiction (Doc. 54) denied.

I.   BACKGROUND

A March 19, 2020 indictment charged Defendants with possession and conspiracy to possess with intent to distribute 5 kilograms or more of cocaine on board a vessel subject to the jurisdiction of the United States in violation of 46 U.S.C. §§ 70503(a), 70506(a) and (b), 18 U.S.C. §§ 2 and 21, and 21 U.S.C. 960(b)(1)(B)(ii). Doc. 1. The charges arose after Defendants were interdicted in international waters of the Eastern Pacific Ocean by the United States Coast Guard on March 10, 2020, and a search of their go-fast vessel ("GFV") led to the discovery of cocaine hidden under false decking of the GFV. Docs. 120-1 at 1–2.

The GFV was spotted by a maritime patrol aircraft on March 10, 2020, in an area of international waters known for drug trafficking. Doc. 68-1 at 1. The GFV was white with painted markings on the side and was carrying three persons on board. *Id.* The vessel bore the name *Divino Nino Jesus* and the hull was marked with letters and numbers: "PQ-1647" and other painted markings. *Id.*

The patrol aircraft conveyed the information to a Coast Guard cutter called *Mohawk*, which was on patrol in the area. Doc. 123 at 34. A boarding team from the *Mohawk* was dispatched in a small, 26-foot, over-the-horizon ("OTH") boat, *Hawk I,* to intercept the GFV. *Id.* at 36, 122. The Coast Guard personnel who made up the

Boarding Team consisted of Chief Boatswain's Mate Jeremy Swearer ("Chief Swearer"), United States Coast Guard Maritime Enforcement Specialist Luis Saenz ("Officer Saenz"), United States Coast Guard Boatswain's Mate First Class Seth Pontecorvo ("Officer Pontecorvo"), Boatswain's Mate Second Class Harry Seibert, and Machinery Technician Petty Officer Third Class Don Castellon. *Id.* at 35, 145. Chief Swearer, who was the Boarding Officer, relayed back to the *Mohawk* the Boarding team's observations regarding the GFV including shape and color of markings on the GFV. *Id.* at 38–39. No flag was flying from the GFV, but the white hull had blue trim, stripes on the forward part of the bow, and a square painted on the aft with colored stripes. *Id.* at 40, 78, 155.

As *Hawk I* came alongside the GFV, Officer Saenz announced their presence, introducing himself and the crew. Doc. 123 at 146. Officer Saenz is a native Spanish speaker and certified translator by the U.S. Coast Guard. Doc. 123 at 140, 161. Chief Swearer, through Officer Saenz who was serving as translator, directed the Defendants to gather in the center of the GFV, and Defendants complied. Doc. 123 at 41. Once Chief Swearer determined there was no immediate danger, the "Go-Pro" recording device being worn by Officer Saenz was turned off and Chief Swearer, through Officer Saenz, began the right of approach questioning. *Id.* at 38.

Aboard *Hawk I* were laminated copies of the Alpha and Victor reports,[1] which Chief Swearer used. *See* Docs. 68-1, 68-2; 123 at 122. Using a grease pen to mark up

---

[1] Officer Saenz testified generally that "the Alpha Report is what outlines [their] right-of-approach questions, and it is used to determine the vessel's nationality in international waters.

3

the laminated sheets, Chief Swearer noted the Boarding Team's observations of the GFV and Defendants' responses to the questions asked. *Id.* at 45. As he's looking at the sheets, Chief Swearer testified that he told the translator Officer Saenz to ask the exact verbiage from the sheets. *Id.* at 42, 44. Officer Saenz asked each of the questions on the Alpha and Victor reports using the exact same language as appears on the reports. *Id.* at 43. Officer Saenz testified he asked each Defendant individually in Spanish, while pointing with his hand at the Defendant whom he was asking, if they are the captain or the person in charge. Doc. 123 at 149–50. All of the Defendants responded that they took turns driving the boat, but no one was directly in charge of that voyage. *Id.* at 151. None of them indicated that any of the others were in charge. *Id.* Officer Saenz then asked each Defendant in Spanish, while pointing to the individual with whom he was speaking, if they wanted to claim nationality of the vessel. *Id.* at 152. Chief Swearer confirmed this procedure in which Officer Saenz pointed to each individual Defendant when asking the questions from the reports. *Id.* at 119. Defendants responded "no;" they did not want to make a claim of nationality for the vessel. *Id.* at 44, 152.

Question 3 on the Victor Report to be directed to the suspects as a group reads as follows:

"Who is the master or person in charge/(PIC) of the vessel?" If no one is identified as the master or PIC, ask each person individually, "Are you the master or

---

And then a . . . Victor Report has [their] right-of-visit questions, which is for a boarding of such a vessel to, again, determine its nationality." Doc. 123 at 143.

4

PIC?" If no one admits to being the master or PIC, ask each person individually, "Do you claim nationality for the vessel?" Doc. 68-1 at 3.

Chief Swearer testified that all questions came from the Alpha and Victor reports and that none of the Defendants claimed to be the master. Doc. 123 at 43, 122. Chief Swearer directed Officer Saenz to ask each Defendant if they wanted to make a claim of nationality. *Id.* at 44. When Chief Swearer directed Officer Saenz to ask the questions, he read directly from the verbiage on the Alpha and Victor reports. *Id.* Chief Swearer noted Defendants' responses on the laminated sheets right after Officer Saenz responded with the Defendants' answers. *Id.* at 45. Chief Swearer testified that none of the Defendants identified themselves as the master or made a claim of nationality for the vessel. *Id.* at 43, 44. Two of the Defendants identified themselves as nationals of Ecuador and Colombia. Doc. 123 at 153. Officer Saenz relayed all of Defendants' responses to Chief Swearer who, in turn, relayed the information to Coast Guard personnel on the *Mohawk*. *Id.* at 153–54. The Coast Guard personnel who received the information from Chief Swearer completed the versions of the Alpha and Victor reports admitted into evidence.[2] *Id.* at 45–46, 68.

On March 11, 2020, personnel aboard the *Mohawk* advised Chief Swearer that the Boarding Team had been granted permission to board the vessel as a vessel without a nationality. Doc. 123 at 46, 157. The Boarding Team boarded the GFV and

---

[2] The Alpha and Victor Reports are included in the Case Package which would include, among other things, photographs of the vessel, a diagram of the vessel, and Chief Swearer's investigative report. Doc. 123 at 119–21. Chief Swearer testified that not every single detail is included in his report, but rather it identifies key points and times. *Id.* at 119.

conducted an intrusive search of the vessel. *Id.* at 47–49, 96. No registration documents or cloth flag were found on the GFV. *Id.* at 47. After drilling holes in the deck, the Boarding Team found cocaine in a false deck of the vessel. *Id.* at 49. The Defendants were transferred to the *Mohawk* and detained there and ultimately transported to Port Everglades, Florida. The GFV was sunk at sea for hazard-to-navigation purposes. *Id.*

On June 9, 2020, Angulo Leones moved to dismiss the indictment arguing that the Boarding Team failed to ask for both the master in charge and the individual in charge to make a claim of nationality or registry as part of the inquiry required to determine if a vessel is stateless. Doc. 48. On June 15, 2020, Arboleda Quinones filed a similar motion to dismiss for lack of jurisdiction. Doc. 54. The motions were adopted by Defendant Landazuri Arboleda. Docs. 50, 55, 77. On July 4, 2020, the Government responded in opposition to Defendants' motions to dismiss. Doc. 68. The Magistrate Judge held an evidentiary hearing on the motions to dismiss on October 13 and 14, 2020. Docs. 123, 124.

    A.    *Angulo Leones' Motion to Dismiss Indictment (Doc. 48)*

Angulo Leones moves to dismiss the indictment pursuant to 46 U.S.C. § 70504(a) on the ground that the Court lacks jurisdiction. Doc. 48. Specifically, Angulo Leones contends the Government cannot meet its burden of proving that the vessel was stateless. Angulo Leones claims that prior to declaring a vessel stateless under 46 U.S.C. § 70502(d), the Government was required to ask for both the master and the individual in charge to make a claim of nationality or registry for the vessel. Although the boarding officers asked for the master of the vessel, Angulo Leones argues they did

6

not ask for the individual in charge of the vessel. Angulo Leones provides, in his motion, a picture of the vessel with registration numbers painted on both sides. Additionally, he points to the painted-on Costa Rican flag as indicia of the vessel's registration, ensign and/or nationality. Given the Defendants' claim that they were kidnapped and there was no claim of nationality, Angulo Leones submits the Government was required to determine if the vessel was registered in Costa Rica which it failed to do.

      B.     *Arboleda Quinones' Motion to Dismiss for Lack of Jurisdiction (Doc. 54)*

Defendant Arboleda Quinones moves to dismiss the indictment for lack of jurisdiction. He similarly argues the Court lacks jurisdiction because it improperly treated the vessel as one without nationality. Arboleda Quinones asserts that asking the Defendants only about the master of the vessel is insufficient to make a finding of statelessness. Rather, the Coast Guard was required to inquire as to the individual in charge, which he claims the Coast Guard failed to do. Doc. 54.

      C.     *The Government's Response (Doc. 68)*

In response to the motions to dismiss, the Government argues that the Coast Guard validly established jurisdiction by asking for the master or person in charge of the vessel and upon receiving no response requested a claim of nationality from each Defendant. The Government further claims that the Coast Guard did not err by contacting Columbia to confirm registry and that the visual displays on the subject vessel did not substantiate a claim of Costa Rican nationality. Doc. 68.

      D.     *The Magistrate Judge's Findings and Recommendations (Doc. 144)*

7

At the evidentiary hearing on October 13 and 14, 2020, the Court heard testimony from Chief Swearer, Officer Saenz, Officer Pontecorvo, United States Coast Guard Petty Officer Second Class Nicholas Allen ("Petty Officer Allen"), and United States Coast Guard Lieutenant Kyle Pearson ("Lieutenant Pearson"). The Magistrate Judge received into evidence, without objection, the Government's exhibits, including a map showing the approximate location of the vessel's interdiction, the Alpha Report prepared by the Coast Guard during the interdiction, and the Victor Report prepared by the Coast Guard during the interdiction, among other documents. Doc. 121. Additionally, the Magistrate Judge received into evidence, without objection from the Government, several defense exhibits, including a video of a portion of the interdiction, the Case Package prepared by the Coast Guard relating to the interdiction, photographs of the vessel, the Alpha and Victor Reports prepared by the Coast Guard during the interdiction, a Report of Investigation prepared by Special Agent Jose Ramirez, and a certificate from the United States Department of State. Docs. 119, 120.

Based on the testimony and evidence presented, the Magistrate Judge determined that the Coast Guard affirmatively asked each crew member whether he was the master or individual in charge and whether he wanted to make a claim of nationality for the vessel. Each Defendant declined to make any such claim. The Magistrate Judge concluded that the thorough questioning by the Coast Guard consistent with the questions contained in the Alpha and Victor Reports eliminated the possibility that someone aboard the vessel had the authority to make a claim of

nationality for the vessel but was not asked to do so. Doc. 144 at 18. Thus, the Magistrate Judge concluded the evidence established that the vessel was "without nationality" and therefore appropriately subject to the jurisdiction of the United States under 46 U.S.C. § 70502(c)(1)(A).

The Magistrate Judge also rejected Defendants' contention that the Coast Guard should have considered the markings on the exterior of the vessel as sufficient indicia of nationality to make a claim of nationality for the vessel. The evidence was undisputed that the vessel was not flying a nation's flag, and a search of the vessel by the Boarding Team did not locate a flag. Further, Defendants' argument that the painted markings depicting what Defendants assert was the Costa Rican flag were insufficient under Eleventh Circuit precedent to establish a claim of nationality or registry. Lastly, the Magistrate Judge concluded that the United States' courtesy call to Columbia did not otherwise void a finding of statelessness under the Maritime Drug Law Enforcement Act ("MDLEA").

E. *Luis Elias Angulo Leones' Objections (Doc. 151)*

Angulo Leones now objects to the Magistrate Judge's factual findings and analysis contained in the Report and Recommendation. Angulo Leones claims the Magistrate Judge erred in finding that the boarding team asked for both the master and the individual in charge because the finding goes beyond the sworn testimony of the boarding officer, his report and the report of the boarding team member translator. Doc. 151. He further asserts the protocol documents associated with the interdiction only reference the vessel master and there's no requirement to ask for the person in

charge. He claims the Magistrate Judge erroneously relied on the testimony of a subordinate whose testimony contradicted the testimony of the person in charge.

Angulo Leones asserts the Government's failure to ask the Defendants for the person in charge violates MDLEA jurisdictional requirements. Angulo Leones also argues this failure meant the Government could not know which country to contact to determine the vessel's nationality and a State Department certification could not cure the Government's failure to comply with the MDLEA. Defendants Landazuri Arboleda and Arboleda Quinones adopted the objections raised by Angulo Leones. Docs. 152, 153, 154.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 72(b)(2), in pertinent part, provides that "a party may serve and file specific written objections to the proposed findings and recommendations" of a magistrate judge. The district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *Jeffrey S. v. State Bd. of Educ. of State of Ga.*, 896 F.2d 507, 512 (11th Cir. 1990). The district judge may accept, reject, or modify, in whole or in part, the Report and Recommendation. Fed. R. Civ. P. 72(b)(3). The district judge may also receive further evidence or recommit the matter to the magistrate judge with further instructions. *Id.*

## III.  DISCUSSION

Under the Maritime Drug Law Enforcement Act (MDLEA), it is unlawful for any person on board a "covered vessel" to knowingly possess with the intent to

distribute a controlled substance. 46 U.S.C. § 70503(a). A "covered vessel" under the MDLEA means "a vessel of the United States or a vessel subject to the jurisdiction of the United States." 46 U.S.C.A. § 70503(e)(1). A vessel without a nationality is subject to the jurisdiction of the United States. 46 U.S.C. § 70502(c)(1)(A). Relevant here, the term "vessel without nationality" includes:

> (B) a vessel aboard which the master or individual in charge fails, on request of an officer of the United States authorized to enforce applicable provisions of United States law, to make a claim of nationality or registry for that vessel[.]

46 U.S.C. § 70502(d)(1)(B).

> A.   *Coast Guard asked Defendants Approach Questions Consistent with the Alpha and Victor Reports.*

Defendants contend that the Boarding Team did not ask the correct approach questions so as to deem the GFV a "stateless vessel" subjecting it to the jurisdiction of the United States. The Magistrate Judge found the testimony of Chief Swearer and Officer Saenz to be reliable, found that the Defendants were asked the questions verbatim from the Alpha and Victor reports, and concluded the Coast Guard's thorough questioning was sufficient to extinguish the possibility that someone aboard the vessel had the authority to make a claim of nationality. Defendants' objections that the Magistrate Judge's findings in this regard are in error are due to be overruled.

Asserting the finding is inconsistent with sworn testimony, Angulo Leones claims the Magistrate Judge erred in finding that the Boarding team "asked for both the master and the individual in charge." Doc. 151. The Magistrate Judge found that Chief Swearer and Officer Saenz offered consistent, credible testimony regarding the

11

right of approach questioning and that the questions came directly from the Alpha and Victor Reports. The Magistrate Judge's findings that the Boarding Team thoroughly questioned the Defendants as to whether any of them claimed to be the master or person in charge and whether any claimed nationality of the vessel is supported by the evidence and due to be affirmed. The Magistrate Judge relied on the testimony of Chief Swearer and Officer Saenz, whom she found to be credible, noting they responded to questions directly and without evasiveness as to all questions posed on direct examination and cross-examination. Doc. 144 at 15–18.

"Credibility determinations are typically the province of the fact finder because the fact finder personally observes the testimony and is thus in a better position than a reviewing court to assess the credibility of witnesses." *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002) (citing *Viehman v. Schweiker*, 679 F.2d 223, 227-28 (11th Cir. 1982)). In judging the officers' credibility, the Magistrate Judge observed their demeanor and interest in testifying, the consistencies and inconsistencies in their testimony, and their prepared statements. Doc. 144 at 18. "[I]n evaluating the factual version of events . . . we should defer to the magistrate judge's determinations unless [her] understanding of the facts appears to be 'unbelievable.'" *Ramirez-Chilel*, 789 F.3d at 749 (citing *United States v. Rivera*, 775 F.2d 1559, 1561 (11th Cir. 1985)).

Having reviewed the transcript of the hearing, the Court finds the Magistrate Judge's understanding of the facts to be believable. Angulo Leones repeatedly argues that Chief Swearer's lack of recollection should be credited over Officer's Saenz's testimony. Notwithstanding Chief Swearer's testimony that he could not specifically

12

recall asking about the person in charge, his testimony was consistent that all questions were posed using the exact language of the Alpha and Victor Reports and that he methodically went through the reports. Officer Saenz corroborated this and further confirmed that each Defendant was asked as to whether they wanted to make a claim of nationality for the vessel. Officer Saenz is a certified translator, he has been a part of twelve prior counter-narcotics boardings of which seven he served as interpreter, he is familiar with the Alpha and Victor reports, and when asking the questions, he recites in Spanish the exact meaning of the English words from the reports. Doc. 123 at 140–42, 149.

Defendants primarily rely on the unpublished opinion in *United States v. Guerro*, 789 F. App'x 742, 748 (11th Cir. 2019), for the proposition that the MDLEA requires a U.S. officer to ask for both the master in charge and the individual in charge to make a claim of nationality or registry for a vessel prior to declaring a vessel stateless pursuant to 46 U.S.C. § 70502(d). As the Magistrate Judge points out, however, the issue in *Guerro* was the Coast Guard's failure to ask the defendants to make a claim of nationality for the vessel so it was unclear whether someone with authority could make a claim of registry or nationality for the vessel. *Guerro*, 789 F. App'x at 750. Here, Chief Swearer, through Officer Saenz, specifically gave each individual Defendant the opportunity to make a claim of nationality for the vessel. As the Eleventh Circuit recently noted, even if a boarding team does not specifically ask who is "the individual in charge," the team's questions are nevertheless sufficient where "they did ask all defendants if anyone wished to make a claim of nationality for the vessel" such that

13

"any individual who possessed the authority to make a claim of registry or nationality for the vessel was given the opportunity to do so at the request of a duly authorized officer." *United States v. Cabezas-Montano*, 949 F.3d 567, 589 n.14 (11th Cir.), *cert. denied sub nom. Palacios-Solis v. United States*, 141 S. Ct. 162, 207 L. Ed. 2d 1098 (2020), and *cert. denied sub nom. Guagua-Alarcon v. United States*, 141 S. Ct. 814, 208 L. Ed. 2d 398 (2020), and *cert. denied*, 141 S. Ct. 814, 208 L. Ed. 2d 398 (2020). And, in any event, the credible evidence here is that each Defendant was asked if they were the master or person in charge and if they wanted to make a claim of nationality for the vessel.

A claim of nationality or registry under the MDLEA includes only:

> (1) possession on board the vessel and production of documents evidencing the vessel's nationality as provided in article 5 of the 1958 Convention on the High Seas;
> (2) flying its nation's ensign or flag; or
> (3) a verbal claim of nationality or registry by the master or individual in charge of the vessel.

46 U.S.C.A. § 70502(e)(1), (2). None of the Defendants made a claim of nationality here. Additionally, it is undisputed that the vessel was not flying a flag, nor was one discovered on the vessel upon search by the Boarding Team. Defendants argue that the painted-on markings depicting a flag constitute a claim of nationality or registration, but the Eleventh Circuit has soundly rejected this proposition. *See United States v. Obando*, 891 F.3d 929, 934 (11th Cir. 2018) (flag painted on vessel was not "flying its nation's ensign or flag" for purposes of a claim of nationality or registry under section 70502(e)). The evidence supports the Magistrate Judge's findings that the vessel was stateless.

### B.   State Department Certification

To the extent Defendants contend that the Magistrate Judge should have addressed their arguments regarding the State Department Certification, the Court finds no error in the Magistrate Judge's refusal to consider arguments raised for the first time at the evidentiary hearing. Regardless, Defendants' argument that the State Department Certification "did not cure" the Coast Guard's failure to ask for the person in charge is unavailing. The proper questions were asked as discussed above. Therefore, a Secretary of State Certification is of no import where the Defendants made no claim of nationality and the statelessness of the vessel was clear under subsection (d)(1)(B). *See Cabezas-Montano*, 949 F.3d at 589.

### IV.   CONCLUSION

The determination that the vessel was stateless is amply supported by the evidence of record and the testimony of Chief Swearer and Officer Saenz. The vessel was not flying a flag. No flag was located upon search of the vessel, and the painted-on markings do not support a finding of claim of nationality or registry. None of the Defendants identified themselves as the master or person in charge and none claimed a nationality for the vessel when asked by the officers. As such, the Magistrate Judge is correct that the vessel was a vessel without nationality pursuant to 46 U.S.C. § 70502(d)(1)(B).

After careful consideration of the Report and Recommendation of the Magistrate Judge and the Objections thereto, in conjunction with an independent *de novo* examination of the file, the Magistrate Judge's Report and Recommendation

should be adopted, confirmed, and approved in all respects, and the motions to dismiss denied. The Court will therefore overrule Defendants' objections to the Magistrate Judge's recommendation and deny the motions to dismiss. Accordingly, it is now

**ORDERED**:

(1) The Report and Recommendation of the Magistrate Judge (Doc. 144) is adopted, confirmed, and approved in all respects and is made a part of this Order for all purposes, including appellate review.

(2) Defendant Angulo Leones's Objections (Doc. 151), which Defendants Jhonis Alexis Landzuri Arboleda and Dilson Daniel Arboleda Quinones adopted (Docs. 152, 153), are **OVERRULED**.

(3) Defendant Angulo Leones's Motion to Dismiss Indictment (Doc. 48), which Defendant Jhonis Alexis Landazuri Arboleda adopted (Doc. 50), is **DENIED**.

(4) Defendant Arboleda Quinones's Motion to Dismiss for Lack of Jurisdiction (Doc. 54), which Jhonis Alexis Landazuri Arboleda adopted (Doc. 55), is **DENIED**.

**DONE** and **ORDERED** in Tampa, Florida on August 11, 2021.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies:
Counsel of Record
Unrepresented parties, if any
United States Magistrate Judge