UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                        CASE NO: 8:20-cr-138-CEH-JSS

LUIS ELIAS ANGULO LEONES,
JHONIS ALEXIS LANDAZURI
ARBOLEDA and
DILSON DANIEL ARBOLEDA
QUINONES
_____/

**ORDER**

This matter comes before the Court on the Defendants' Motion for Relief Due to Government Discovery Violations (Doc. 355), filed on October 15, 2021. In the motion, Defendants request a Court order sanctioning the Government for its failure to provide *Brady*[1] and *Giglio*[2] material, failure to provide exculpating videos to Defendants, failure to disclose manipulation of the drug evidence, and failure to disclose why Defendants' personal effects were destroyed. As a sanction for alleged repeated discovery violations, Defendants seek dismissal of the indictments, suppression of evidence, or continuance of the trial. A hearing on the motion was held on October 15, 2021, at which time the Court granted a continuance of the trial that

---

[1] In *Brady*, the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963).
[2] Under *Giglio*, the prosecution is required to disclose evidence of promises made to a witness in exchange for testimony. *Giglio v. U.S.*, 406 U.S. 150, 154–55 (1972).

was scheduled to commence October 18, 2021. *See* Doc. 362. The Court granted the Government the opportunity to file a response to the motion, which the Government filed on October 22, 2021. Doc. 366. The Court, having considered the motion, the response, argument of counsel, and being otherwise advised in the premises, will grant in part the motion to the extent the Court has continued the trial, but otherwise denies any additional requested relief.

## DISCUSSION

In this action brought under the Maritime Drug Law Enforcement Act ("MDLEA"), Defendants seek sanctions against the Government for "continued and pervasive" discovery violations they argue prejudice their ability to defend against the indictments and to adequately prepare for the trial scheduled to begin Monday, October 18, 2021. Defendants contend that the Government misrepresented multiple key facts, which have the potential of altering the outcome of this case for the defense. The Government responds in opposition stating that Defendants' motion is replete with mischaracterizations and misunderstood facts. It submits that the defense motion is merely one more attempt to re-litigate issues already argued by Defendants and resolved by the Court. The Government denies there has been any bad faith by the Government or prejudice to Defendants regarding the discovery and other issues raised by the motion, but to the extent any prejudice exists, it has been cured by the Court granting Defendants' requested continuance over the Government's objection. Defendants assert numerous discovery violations by the Government they contend

warrant dismissal of the indictments, or some other form of sanction against the Government. The alleged violations are addressed in turn below:

### A. Video Produced October 14, 2021

On October 14, 2021, four days before the start of trial, the Government produced for the first time a video that Defendants state "may reveal" the transfer of drugs, two of the prisoners, and Defendants' personal effects. Doc. 355 at 9. Defendants state the late production of this evidence is prejudicial to their ability to prepare their defense for trial. As the trial has now been continued, the Court disagrees.

While preparing witnesses for trial, the Government first learned on October 13, 2021 of the existence of the video, which was made on the personal Go-Pro of BMC Caleb Palermo. The Government produced the video to the defense the next day on October 14, 2021. BMC Palermo is one of the drug chain of custody witnesses. The Government submits that on October 6, 2021, Defendants raised error in the drug chain of custody and authentication. According to the Government, the video depicts the at-sea transfer of the bulk drug evidence from the Coast Guard Cutter ("CGC") *Mohawk* to the CGC *Hamilton* that took place on March 12, 2020. BMC Palermo was the Coast Guard contact on the *Hamilton* that signed for the transfer. Doc. 366 at 12. The video depicts coast guard witnesses holding up forms previously provided in discovery and corroborates the written chain of custody forms and anticipated testimony about the cocaine being wrapped in green cellophane and red tape aboard the CGC *Hamilton*, which is also how it appeared when it arrived at the DEA laboratory.

The Government has a continuing duty to provide potentially exculpating evidence. The video was produced the day after the Government became aware of it, and thus the Court finds no bad faith in its production within days of the trial in this case, given the Defendants' recent challenge to the chain of custody. Defendants will be able to question the chain of custody witnesses at the trial. With the continuation of the trial, the Court further finds that will cure any potential prejudice. No additional sanctions are warranted.

### B. Government's Witness List

Defendants argue they have been prejudiced by the Government's expanded witness list, including its disclosure of more Coast Guard witnesses than previously identified—from 3 to 6. Doc. 355 at 10, 16. The Government responds that it timely produced its witness list on October 14, 2021, and every witness on the list was previously disclosed in discovery, except for one individual, Ed Dolara, a chain of custody witness to establish the foundation for admission of the jail phone calls. The coast guard witnesses identified on the Government's witness list were primarily drug chain of custody witnesses whose names appeared in the documents previously produced. Defendants fail to establish the Government's bad faith or Defendants' prejudice, particularly in light of the continuance, regarding the disclosure of the Government's witnesses.

### C. Video from *Mohawk* helicopter

Defendants argue that the Government initially claimed that a maritime patrol aircraft ("MPA") spotted Defendants' boat but later changed its story to claim the

Defendants' vessel was discovered on a "routine flight" of the CGC *Mohawk* helicopter. Defendants posit there was no MPA and the *Mohawk* did not engage in a routine flight, but rather flew directly out to Defendants' vessel over "stand down" orders from D11 command in California. Defendants contend the Government recently acknowledged that video from the *Mohawk* helicopter was partially working but overwritten. Defendants claim the missing audio and video would have supported the Defendants' report that they were being forced to sea and headed for a nearby freighter for help.

In response, the Government explains that discovery provided on April 15, 2020, shows that the *Mohawk* helicopter launched for a routine surface patrol and sighted Defendants' vessel. Further, the Government contends that Defendants misconstrue the chat logs and there was no stand down order regarding this vessel, but rather the stand down order pertained to a different case. Finally, the Government argues that even if the helicopter audio was working, it is doubtful that it would pick up communications occurring on the vessel below. The Government submits there is no prejudice because there are other forms in which Defendants' "self-serving exculpatory statements" are documented including through the testimony of Petty Officer Saenz or through a document in a case package or chat log. Regardless, the Government argues the self-serving statements are inadmissible hearsay. The Court makes no finding currently as to the admissibility of the Defendants' statements through other witnesses or documents but concludes there is no prejudice to Defendants by the lack of video and audio from the *Mohawk* helicopter.

### D. Destruction of Defendants' Personal Belongings

Defendants claim they have been prejudiced by the destruction of their personal belongings. The Government responds that all of Defendants' belongings were photographed, and thus there is no prejudice.[3] The Court agrees. Although Defendants summarily claim the evidence is exculpatory, they fail to show prejudice by the evidence being in photographic rather than tangible form and how the photographic evidence would be insufficient for use at trial. *See United States v. Hernandez*, 864 F.3d 1292, 1305 (11th Cir. 2017) ("Government's discarding the defendants' clothes and the burlap sacks in which the bales of cocaine were found" did not violate defendant's rights, either under *Brady* or under *Arizona v. Youngblood*, 488 U.S. 51 (1988)). The motion is due to be denied on this point.

### E. Repackaging, Transport, and Testing of Drug Evidence

Defendants argue they are prejudiced by the Government's handling and testing of the drug evidence. They argue that the vastly different sample sizes, dates of sample selection, differing amounts of cocaine, differing packaging, and evidence of repackaging defeats any attempt by the Government to prove this cocaine came from the Defendants' vessel. The issue regarding potential problems with chain of custody was already argued by the parties and addressed by the Court. Consistent with the Court's prior ruling, the Defendants may challenge testing or chain of custody through

---

[3] The Government explains that some of the Defendants' personal effects were transferred to the Pinellas County jail with the Defendants and would be available for use by the defense. The contaminated clothing was destroyed, but there are various photographs depicting the Defendants' belongings.

questioning witnesses at trial. Any purported problems with the testing or chain of custody does not support dismissal of the indictments here.

### F. Jail House Calls

Defendants previously moved *in limine* regarding the jail house calls. As discussed at prior hearings, it should be of no surprise to experienced defense counsel that the jail records inmates' phone calls and that such calls are routinely used by the Government in criminal cases. Any concern of prejudice regarding the timing of the production of recordings of the jail calls has been cured by the continuance granted. No further sanction is warranted.

### G. Indicia of Nationality

Defendants argue that the acknowledgement of "tons of indicia" referenced in the smooth logs would necessarily change the Court's jurisdictional analysis. The Court disagrees. Whether Coast Guard personnel recognized the painted markings to be consistent with a Costa Rican flag is of no consequence. Case law in the Eleventh Circuit clearly holds that a painted-on flag is not the same as a vessel flying a flag and does not support a nationality finding. *See United States v. Obando*, 891 F.3d 929, 934 (11th Cir. 2018) (holding that Columbian flag painted on the side of the vessel did not constitute a claim of Colombian nationality that obliged the Coast Guard to ask Colombian officials whether the vessel was registered there). Defendants offer no new evidence or argument to warrant revisiting the Court's jurisdictional finding.

## CONCLUSION

The Defendants' arguments have already been raised and addressed by the Court. As for production of the Go-Pro video on October 14, 2021, the Court finds no bad faith as the Government produced the video the day after its discovery. Finally, the Court finds Defendants fail to demonstrate on this motion that they are prejudiced in the preparation of their defense or otherwise, particularly considering the continuance granted. Thus, no further sanctions are warranted.

Accordingly, it is hereby

**ORDERED**:

1. Defendants' Motion for Relief Due to Government Discovery Violations (Doc. 355) is **GRANTED in part** to the extent that the Court grants Defendants' request for a continuance of the trial.[4] In all other respects, Defendants' motion (Doc. 355) is **DENIED**.

2. The trial of this case is continued until the January 2022 trial term, commencing January 4, 2022.[5]

**DONE AND ORDERED** in Tampa, Florida on November 22, 2021.

Charlene Edwards Honeywell
United States District Judge

Copies to: Counsel of Record and Unrepresented Parties, if any

---

[4] Although the motion was filed on behalf of all Defendants, Defendant Angulo Leones objected to a continuance of the trial.

[5] The Court has specially set this case for trial commencing January 10, 2022 in courtroom 17.